# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

THERESA SHROYER,         )
          Plaintiff,         )
                      )
v.                     )     No.  3:09-CV-203
                      )     (Phillips)
DOLLAR TREE STORES, INC.,   )
          Defendant.     )

## MEMORANDUM OPINION

### I.    Introduction

This matter comes before the court on Defendant's Motion for Summary Judgment (Doc. 13) pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having read the parties' accompanying memoranda and thoroughly reviewed the record in this case, and for the reasons stated herein, this court finds that there are no genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment (Doc. 13) is **GRANTED** and this case is **DISMISSED**.

### II.    Statement of the Facts

#### A.    Defendant Dollar Tree's Policies and Procedures

Defendant Dollar Tree Stores, Inc. ("Dollar Tree") operates more than 400 retail variety stores nationwide, including the Alcoa Highway, Deane Hill, and Chapman Highway stores in Eastern Tennessee. (Barnes Dec. ¶ 2.) At the time of the termination in question, Jerry Barnes was Dollar Tree's District Manager for Eastern Tennessee, and Barbara Leonard was Dollar Tree's Human Resources Manager for the Southeast United States, known as Zone 2, which includes all

Dollar Tree stores in Eastern Tennessee. *Id. ¶* 3; (Leonard ¶ 2.) Tammy Cannon was Dollar Tree's

store manager for the Chapman Highway store, and Charlotte Hensley, Dana Ogle, and Plaintiff

Theresa Shroyer ("Shroyer") were the assistant managers of the Chapman Highway store. (Barnes

¶ 6); (Cannon Dec. ¶¶ 2, 3.) According to Dollar Tree's Position Description & Responsibilities

form, assistant managers' principal responsibilities include performing all opening and closing

procedures and protecting and securing all company assets, including store cash. (Barnes ¶ 6);

(Leonard Dec. ¶ 8, Ex. 6.)

At all times material to this case, Dollar Tree employees were governed by policies

and procedures set forth in the Dollar Tree Stores Associates Handbook and the Dollar Tree Code

of Ethics. (Leonard ¶ 3, Exs. 4, 5.) All employees receive copies of these documents during

employee training. (Barnes ¶ 8, Ex. 2); (Leonard ¶ 3.) Dollar Tree has a strict Cash Handling and

Security Policy, which provides:

> (b)    Desks, file cabinets, locked offices, or change drawers are not to be used to
> store bank deposits, moneybags, or tills. **Always secure money (including
> deposits and moneybags) in the safe.**
> (c)    All funds are to be locked in the safe after the store closes (including all till
> money, Change Fund, Petty Cash Fund, and deposits).

(Leonard ¶ 6, Ex. 4); (Shroyer Dep. 116:23-117:4) (emphasis in original). The Dollar Tree Stores

Associates Handbook also provides:

> Security Issues
> •    Always keep safeguarding of cash in mind.
> •    Do not leave a cash register unattended.
> •    Never leave a safe unlocked.

(Leonard ¶ 7, Ex. 5); (Shroyer Dep. 118:16-119:9.) Dollar Tree's Reviewing Time Reports Policy

and its Wage and Hour Compliance Policy require assistant managers and sales associates to record

their hours by clocking in and out at the time clock. (Cannon ¶ 7); (Leonard ¶ 4, Exs. 1, 2.) A

computer program electronically records the work schedule and the actual hours worked. (Cannon ¶ 7); (Leonard ¶ 10.) Finally, Dollar Tree's nonretaliation policy, entitled the Optional Modified Duty Policy for All Associates on Workers' Compensation, encourages employees to return to work after filing a workers' compensation claim. (Leonard ¶ 5, Ex. 3.)

Under Dollar Tree's established store procedures, one assistant manager opens the store, and one closes the store. (Cannon ¶ 6.) The closing manager is responsible for locking the front door, retrieving the cash register tills, counting the money, preparing the bank deposit slips, putting the day's earnings in moneybags, filling the tills with $75.00 for the following morning, placing the tills in the safe, locking the safe, locking the office door, and taking the moneybags to the bank. (Barnes ¶ 10); (Leonard ¶¶ 6-7, Exs. 4, 5); (Shroyer Dep. 113:21-116:22.) A cashier is present at all times to watch the closing manager handle the money and to accompany the closing manager to the bank, but cashiers do not have a key to the office or the combination to the safe. (Barnes ¶¶ 10, 11); (Shroyer Dep. 114:3-18.) It is the closing manager's job to secure Dollar Tree's tills and money in the safe at the end of the day. (Shroyer Dep. 116:19-22.)

Dollar Tree strictly enforces its policies and procedures. (Leonard ¶ 9.) Dollar Tree's Corrective Action Policy provides that failure to comply with Dollar Tree's policies and procedures may result in verbal counseling, written counseling, demotion, suspension without pay, and termination. (Barnes ¶ 8, Ex. 2.) Warnings are not necessary or guaranteed prior to termination. *Id.* Between 2007 and 2009, at least ten Dollar Tree employees in the Southeast United States were terminated for their failures to secure cash or follow store security procedures, including one employee who left money on the desk in the office and left the office unlocked, and one employee who left two of the cash register tills on the floor of the office overnight. (Leonard ¶ 9, Ex. 7.) The

3

parties agree that leaving the safe unlocked overnight would be a gross and flagrant violation of Dollar Tree's cash handling and store security policies and procedures, (Barnes ¶ 12); (Leonard ¶ 9); (Shroyer Dep. 118:3-119:17), and that such a violation would be sufficient grounds for termination. (Barnes ¶ 12); (Shroyer Dep. 125:15-18).

Regarding cash security at the Chapman Highway store during the events at issue, four people had keys to the office door and the combination to the safe: Store Manager Terry Cannon, and Assistant Managers Theresa Shroyer, Dana Ogle, and Charlotte Hensley. Every night, the safe was supposed to contain the tills for the next morning, petty cash, reserve cash, and any other cash not deposited at the end of the day. (Barnes ¶ 10.) In regard to employee discipline at the Chapman Highway store, Shroyer alleges in an affidavit filed contemporaneously with her response to Dollar Tree's motion for summary judgments that there were several incidents prior to the events at issue in this case where her coworkers, including Charlotte Hensley and an employee named Andy, left the safe open and were not terminated for doing so. (Shroyer Aff. ¶ 8.)

### B.    Plaintiff Theresa Shroyer's Work History

On October 18, 2005, Shroyer was hired as an assistant manager at Dollar Tree's Alcoa Highway store in Alcoa, Tennessee. (Barnes ¶ 7); (Shroyer Dep. 32:6-33:5.) Shroyer subsequently was transferred to the Chapman Highway store on November 5, 2006, and then to the Deane Hill location in early 2007, and finally back to the Chapman Highway store on October 14, 2008. (Barnes ¶ 7); (Shroyer Dep. 48:9-49:15.) Shroyer retained her assistant manager position throughout her employment with Dollar Tree, and had the closing and cash security responsibilities associated therewith. (Shroyer Dep. 34:2-6.)

4

During her employee orientation, Shroyer was given the Dollar Tree Stores Associates Handbook, the Dollar Tree Code of Ethics, and a written description of her job responsibilities, and in March of 2007, she signed a form acknowledging that she read and understood Dollar Tree's cash handling policies. (Barnes ¶ 9, Ex. 4); (Shroyer Dep. 45:3-8, 106:25-107:22, Exs. 4, 21.) Dollar Tree also produced eight pages of notes in Shroyer's handwriting regarding said policies. (Shroyer Dep., Exs. 16-19.) Shroyer does not recall writing, signing, or receiving any of these documents, nor does she recall any of Dollar Tree's specific policies. *Id.* 96:1-104:1. However, she acknowledges that her closing responsibilities included locking the front door, retrieving the cash register tills, counting the money, preparing the bank deposit, preparing the tills for the next day, placing the tills in the safe, locking the safe, locking the office door, and taking the deposit to the bank. *Id.* 112:9-18, 115:3-19, 116:2-14. She acknowledges that the closing manager is responsible for securing the tills and cash in the safe at the end of each day. *Id.* 116:19-22.

Shroyer had disciplinary history at Dollar Tree. On March 12, 2007, she received a written warning for failure to follow instructions. (Barnes ¶ 9, Ex. 3); (Shroyer Dep. 45:3-18.) On November 12, 2007, she received a verbal warning for violation of Dollar Tree's policy against unprofessional conduct. (Barnes ¶ 9, Ex. 5); (Cannon ¶ 5); (Shroyer Dep. 129:18-130:24.) She also received a written warning for persistent tardiness on January 17, 2008. (Barnes ¶ 9, Ex. 6); (Cannon ¶ 5); (Shroyer Dep. 133:1-24.) Finally, she received a verbal warning on March 1, 2008, for chasing shoplifters out of the store, which violated store policies against abandoning the cash register and putting employees in danger of injury. (Barnes ¶ 9, Ex. 7); (Cannon ¶ 5.)

Of note in Shroyer's work history at Dollar Tree is the fact that, on March 29, 2007, she was robbed at gunpoint while making a deposit at the bank for the Deane Hill store. (Barnes ¶

7); (Shroyer Dep. 49:5-12.) Shroyer alleges that, after she was robbed, her supervisors at Dollar Tree continued to force her to make bank deposits at night. (Shroyer Dep. 85:12-86:22.)

Though Shroyer denied in her interrogatories and at her deposition that she filed any workers' compensation claims at Dollar Tree prior to the hand injury and claim at issue in this case, Shroyer in fact filed three such claims prior to the claim that allegedly led to her termination. (Diedrich Dec. ¶ 3, Exs. 1-10); (Shroyer Dep. 55:19-78:12.) On March 21, 2006, Shroyer reported that a product had fallen on her, striking her in the stomach and pelvic area (Diedrich ¶ 3, Exs. 1-3); (Shroyer Dep. Ex. 6.) On September 17, 2006, Shroyer reported that she had injured her upper back while catching a falling case of fruit juice. (Diedrich ¶ 3, Exs. 4-5); (Shroyer Dep. 63:12-69:9.) Finally, on May 3, 2007, Shroyer reported an injury to her "lower low back area" which she sustained while vacuuming at the Deane Hill store. (Diedrich ¶ 3, Ex. 7); (Shroyer Dep. 71:20-77:6.) Shroyer does not recall any adverse action taken against her as a result of these workers' compensation claims. *Id.* 62:16-63:3, 70:5-71:1. In fact, Shroyer swears under oath that she does not remember receiving these injuries, filing any of the workers' compensation claims that bear her signature, or receiving thousands of dollars' worth and several months of medical care, of which Dollar Tree has produced voluminous records. *Id.* 55:19-78:12, Exs. 6-12.

## C. Events Surrounding Plaintiff's Workers' Compensation Claim in June 2007

On June 11, 2007, Shroyer injured her left thumb and hand while unloading a semi-truck full of freight for Dollar Tree. (Cannon ¶ 4); (Diedrich ¶ 3; Ex. 8); (Shroyer Dep. 78:13-15, 79:6-25.) She immediately filed a workers' compensation claim. A month later, Shroyer met with Dr. Robert Ivy, M.D., an orthopedic surgeon, about her injuries, and Dr. Ivy diagnosed a fracture of her left hand. (Shroyer Dep. 79:10-15, Ex. 13.) Dr. Ivy's medical records indicate that he

suggested she wear a splint to avoid surgery and told her the fracture might get better with time. *Id.* However, Shroyer alleges that these records are untrue, and that Dr. Ivy informed her that surgery was necessary. *Id.* 82:13-83:12. Dr. Ivy performed surgery on Shroyer's hand on October 18, 2007, and permitted her to return to work on November 5, 2007, with the initial restriction of "no use of the left hand." (Cannon ¶ 4, Ex. 1); (Shroyer Dep. 83:10-18, 88:14-20, 89:2-4, Ex. 14.) Shroyer, who had transferred back to the Chapman Highway store in early October, gave this recommendation to Chapman Highway Store Manager Terry Cannon and returned to work. (Cannon Dec. ¶ 4.)

Shroyer alleges that Cannon did not accommodate her restriction. (Shroyer Dep. 89:5-9); (Shroyer Aff. ¶ 9.) She claims that, every day, Cannon had a list of jobs for Shroyer to do, which included vacuuming and sweeping the floors, cleaning the shelves, unloading boxes off crates, cutting boxes open, taking products out, putting products on the shelves, and breaking boxes down. (Shroyer Dep. 89:10-13, 90:3-19, 91:14-92:6, 94:11-17.) After Dr. Ivy changed his restriction from "no use" to "not lifting more than five pounds" on December 12, 2007, Shroyer alleges that Cannon asked Shroyer to lift cases as heavy as 50-60 pounds. *Id.* 94:6-17, Ex. 15.

Conversely, Cannon claims that she told Shroyer to "work within" her restrictions, and tried to accommodate Shroyer's restrictions by assigning her "front end" work at the register, supervisory work, and "recovery work," which consists primarily of rearranging and pulling products forward on the shelves. (Cannon ¶ 4.) Cannon is aware that Shroyer violated her restrictions from time to time, and says that when Cannon observed such violations and found out from other employees that Shroyer was not following the restrictions, Cannon asked Shroyer to follow the restrictions. *Id.*; (Shroyer Dep. 91:3-13.)

### D. Events Surrounding Plaintiff's Termination in April 2008

Shroyer was the closing manager at the Chapman Highway store on April 3, 2008. (Cannon ¶ 8); (Shroyer 147:8-11.) Pursuant to her responsibilities, and in the presence of a cashier, Shroyer locked the front door, collected the cash register tills, took the tills to the back office, counted the money in the tills, put the money in moneybags, filled out the bank deposit slips, placed $75 in each till for the following morning, and placed the tills and remaining cash in the safe. (Shroyer Dep. 147:4-149:2.) According to the computerized time records, Shroyer clocked out at 10:06 p.m. (Cannon ¶ 8.) Shroyer was the only person in the store at the time of closing with a key to the office and the combination to the safe. (Barnes ¶¶ 11, 14); (Shroyer Dep. 148:5-12.)

There is a disagreement as to whether anyone entered the store between the time of Shroyer's closing on April 3, 2011, and the scheduled store opening at 8:30 a.m. on April 4, 2011. Shroyer insists that Assistant Manager Ogle, who had a key to the office and the combination to the safe, came in at 5:00 a.m. on April 4, 2008 and could have opened the safe. (Shroyer Dep. 153:18-154:5); (Shroyer Aff. ¶ 6.) Shroyer claims that Ogle was scheduled to and did in fact come to the store with a stocking crew at 5:00 a.m. on April 4, 2007. (Shroyer Dep. 154:1-10, 156:8-22.) However, Dollar Tree's computer records for the week of 3/30/2008 - 4/5/2008 show no employees, and no stocking crew, working before 8:30 a.m. on April 4, 2008. (Cannon ¶ 8); (Leonard ¶ 10, Exs. 8, 9.) The stocking crews that week recorded working on the mornings of March 30, April 3, and April 5. (Cannon ¶ 8); (Leonard ¶ 10, Exs. 8, 9.) Neither Ogle nor any morning stocking crew was scheduled to work or recorded working any time on the morning of April 4, 2008. (Cannon ¶ 8); (Leonard ¶ 10, Ex. 8.)

The parties do agree, however, that at 8:30 a.m. on April 4, 2008, Store Manager Terry Cannon and Assistant Manager Charlotte Hensley unlocked and entered the store. (Cannon

8

¶ 10.) No one was in the store when they opened, and the office was locked. *Id.* ¶¶ 10, 11. Cannon and Hensley unlocked and entered the office, and both observed the door to the safe wide open. *Id.* Cannon called District Manager Jerry Barnes, who instructed Cannon to carefully count and then lock up the money. (Barnes ¶ 13); (Cannon ¶ 10.) Cannon determined that all of the cash was accounted for. (Cannon ¶ 10.) Barnes arrived just before 9:00 a.m. (Barnes ¶ 14); (Cannon ¶ 11.) He questioned Cannon and Hensley about the morning's events and looked at the store's computerized schedule and time records. (Barnes ¶ 14); (Cannon ¶ 11.) Barnes discerned that Theresa Shroyer was the closing manager the night before and that Cannon and Hensley had been the first employees to arrive at Dollar Tree that morning. (Barnes ¶ 14); (Cannon ¶ 11.) Barnes concluded that Shroyer had negligently left the safe open. (Barnes ¶ 14.)

Barnes called Human Resources Manager Leonard, whose responsibilities include partnering with District Managers to reach a decision on appropriate levels of discipline for policy violations. (Leonard ¶¶ 3, 11.) Barnes relayed all of the facts to Leonard, and the two determined that the facts indicated Shroyer left the safe open the night before, and that leaving the safe open all night was a terminable offense. (Barnes ¶ 15); (Leonard ¶ 11.) Leonard instructed Barnes to obtain written statements from the two witnesses and to terminate Shroyer. (Barnes ¶ 15); (Leonard ¶ 11.) Barnes obtained said statements, and Cannon prepared termination paperwork at Barnes's request. (Barnes ¶ 16, Exs. 8, 9); (Cannon ¶ 12, Ex. 3.) The stated reason for termination was "Failure to protect company assets. Left safe standing open from night before on April 3, 2008. Theresa was the closing manager." (Barnes ¶ 17, Ex. 10); (Cannon ¶ 12, 13, Ex. 3.)

When Shroyer arrived for work, Cannon and Barnes met with her in the store office. (Barnes ¶ 18); (Cannon ¶ 14); (Shroyer Dep. 149:17-19.) They asked her if she knew it was against

company store policy to leave the safe door open, and Shroyer indicated that she did. (Barnes ¶ 18); (Cannon ¶ 14.) Barnes then informed her that the safe was left open. (Barnes ¶ 18); (Cannon ¶ 14); (Shroyer Dep. 150:24-151:1.) The parties' testimony diverges at this point: Cannon and Barnes claim Shroyer admitted she might have made a mistake and left the safe open, (Barnes ¶ 18); (Cannon ¶ 14), but Shroyer claims she "emphatically denied" and in fact did not leave the safe open, (Shroyer Dep. 150:12-13, 151:2-7, 152:5-6); (Shroyer Aff. ¶ 5). Shroyer admits that neither man said anything to make her believe she was being terminated because of her workers' compensation claim in June of 2007. (Shroyer Dep. 164:10-17.) Shroyer became upset, refused to sign the termination documents, turned in her store keys, and left. (Barnes ¶ 19, Ex. 10); (Cannon ¶ 14); (Shroyer Dep. 160:9-161:2, 162:5-6).

Shroyer filed for unemployment compensation on April 17, 2008. (Barnes ¶ 20, Ex. 11.) The Tennessee Department of Labor and Workforce Development Division of Employment Security denied her benefits on May 5, 2008. *Id.* ¶ 20, Ex. 12. Shroyer appealed to the Appeals Tribunal, which held a hearing by telephone on May 28, 2008, and granted Shroyer unemployment benefits on May 29, 2008. *Id.* ¶ 21, Exs. 13-16. Dollar Tree did not appeal the grant of benefits. *Id.* ¶ 21. After being terminated from Dollar Tree, Shroyer unsuccessfully attempted to gain employment from Dockside Grill, Alcoa Laundromat, and Dollar General. (Shroyer Dep. 165:3-11.)


## III.     Statement of the Case

On April 3, 2009, Plaintiff Theresa Shroyer filed the instant case in the Circuit Court for Knox County, alleging that Defendant Dollar Tree Stores, Inc. terminated her in retaliation for filing a workers' compensation claim as a result of her injury on June 11, 2007. (Doc. 1, Attach 1.)

Shroyer's prayer for relief seeks compensatory damages in the amount of five hundred thousand dollars ($500,000) and punitive damages in the amount of two million dollars ($2,000,000). (Doc. 1, Attach. 1, Prayer ¶ 1-2.)

Dollar Tree timely removed the case to this court pursuant to 28 U.S.C. § 1441(a). (Doc. 1) The parties engaged in discovery, and trial is set for January 24, 2012. On December 3, 2010, Dollar Tree filed this Motion for Summary Judgment (Doc.13). Dollar Tree alleges that it terminated Shroyer because she left the safe open all night on April 3, 2008, and maintains that neither Shroyer's workers' compensation claim nor the restrictions from her injuries were factors in Dollar Tree's termination decision. (Barnes ¶ 24); (Leonard ¶ 12.)

## IV.    Statement of the Jurisdiction

Plaintiff Theresa Shroyer is a citizen and resident of Blount County, Tennessee. Defendant Dollar Tree Stores, Inc. is incorporated in the Commonwealth of Virginia and has its principal place of business in Chesapeake, Virginia. Because the parties are of diverse citizenship and the amount in controversy in this case exceeds $75,000, exclusive of costs and interest, this court has federal diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Dollar Tree operates several stores and conducts business in the Eastern District of Tennessee, and Shroyer worked at several of these Dollar Tree stores from 2005 to 2008. All events giving rise to this lawsuit took place in the Eastern District of Tennessee. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b).

## V.    Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In deciding a motion for summary judgment, a district court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962). In order to prevail at the summary judgment stage, the movant bears the burden of showing the "absence of a genuine issue of material fact as to an essential element of the non-movant's case," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A material fact is one that is necessary in order to apply the law. *Anderson*, 477 U.S. at 248. A mere "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252; *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Goller v. Ohio Dep't of Rehab. & Corr.*, 285 Fed. App'x 250, 255 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 256).

## VI.     Analysis

Tennessee recognizes the doctrine of employment-at-will, under which an employer can discharge an employee "for good cause, bad cause or no cause at all." *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 443 (Tenn. 1984). However, in *Clanton v. Cain-Sloan Company*, the

12

Tennessee Supreme Court carved out a "narrow exception" to this doctrine, in order to protect a worker's right to assert a workers' compensation claim under Tenn. Code § 50-6-114(a) (2005). *Id.* at 444-45; *see also Cooper v. Wyndham Vacation Resorts, Inc.*, 570 F. Supp. 2d 981 (M.D. Tenn. 2008) (quoting *Abraham v. Cumberland-Swan, Inc.*, 1992 Tenn. App. LEXIS 739, *9, *16 (Tenn. Ct. App. Aug. 28, 1992)). The *Cain-Sloan* doctrine provides, "a cause of action for retaliatory discharge, although not explicitly created by the [workers' compensation] statute, is necessary to enforce the duty of the employer, to secure the rights of the employee, and to carry out the intention of the legislature." *Cain-Sloan*, 677 S.W.2d at 445. Plaintiff Theresa Shroyer alleges that Defendant Dollar Tree Stores, Inc. violated the *Cain-Sloan* doctrine because Dollar Tree terminated her for exercising her rights under the Workers' Compensation Act.

In order to establish a prima facie case of retaliatory discharge for asserting a workers' compensation claim, a plaintiff must prove that (1) the plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a workers' compensation claim against the defendant; (3) the defendant terminated the plaintiff; and (4) the workers' compensation claim was a substantial factor in the employer's motivation to terminate the employee. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). If the plaintiff establishes these elements, the burden of proof shifts to the defendant to put forth a legitimate, nonretaliatory reason for the termination. *Id.* at 559. If the defendant succeeds, the burden shifts back to the plaintiff to prove "[with] specific admissible facts" that the defendant's proffered legitimate nonretaliatory reason is pretext for retaliation. *Hall v. Wal-Mart Stores E., L.P.*, 637 F. Supp. 2d 588, 600 (M.D. Tenn. 2009) (citing *Frizzell v. Mohawk Indus.*, 2006 Tenn. App. LEXIS 321, *9 (Tenn. Ct. App. May 15, 2006)).

### A.    Plaintiff Theresa Shroyer's Prima Facie Case

13

The parties agree that the only element of the prima facie case in dispute in this case is the fourth element: whether the workers' compensation claim was a substantial factor in the Dollar Tree's termination decision. To satisfy this element, a plaintiff's "subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006); *Reed v. Alamo Rent-a-Car, Inc.*, 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999). Instead, the employee must rely on "direct and compelling circumstantial evidence" of a causal relationship. *Newcomb*, 222 S.W.3d at 391. Circumstantial evidence may include:

> The employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false.

*Hall*, 637 F. Supp. 2d at 588 (citing *Newcomb*, 222 S.W.3d at 391). While not alone sufficient, "[t]emporal proximity may also serve as evidence of causation if the plaintiff's prior job performance was otherwise satisfactory." *Id.* at 599 (citing *Cooper*, 570 F. Supp. 2d at 986). Conversely, evidence of the nonexistence of these conditions weighs in favor of the defendant. *See, e.g.*, *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987) (noting that proof that similarly situated employees were disciplined just as harshly as the plaintiff for the same infraction suggests nonretaliation); *Cooper*, 570 F. Supp. 2d at 987-88 ("[D]efendant's willingness to have the plaintiff return to work serves to undercut an argument for retaliatory intent."). Without evidence of a causal relationship between the claim for benefits and the termination, there is no issue for the jury, *Anderson*, 857 S.W.2d at 558-59, and summary judgment is appropriate.

14

In *Newcomb v. Kohler Co.*, the Tennessee Court of Appeals affirmed a jury verdict in favor of a plaintiff alleging retaliatory discharge under the *Cain-Sloan* doctrine. 222 S.W.3d at 368. At trial, the plaintiff presented evidence that at least four of his supervisors made negative statements relating to his workers' compensation claim. *Id.* at 391-93. Such statements included one supervisor instructing another "to keep an eye on Newcomb because he sued the company and to look for a reason to get rid of him." *Id.* at 392. Several supervisors had remarked that employees like Newcomb were the reason why the company's insurance premiums were so high and why the rest of the employees were unable to get raises. *Id.* The court affirmed the jury verdict for the plaintiff because it found that such comments evinced a negative attitude toward the plaintiff's on-the-job injury and workers' compensation claim. *Id.* at 395. The court also noted that the plaintiff had no disciplinary record prior to his workers' compensation claim, and received several written warnings after filing his claim. *Id.* at 378.

The United States District Court for the Middle District of Tennessee considered a similar retaliatory discharge claim in *Hall v. Wal-Mart Stores East, L.P.*, 637 F. Supp. 2d at 600-02. As proof that Wal-Mart terminated her as a result of her workers' compensation claim, the plaintiff in *Hall* argued that Wal-Mart treated the plaintiff with a negative attitude, failed to properly accommodate her injuries, questioned and ultimately denied her workers' compensation claim, and did not terminate other employees who violated the same store policy. *Id.* at 600-01. Using the Tennessee Court of Appeals's framework from *Newcomb*, the court found insufficient proof that (1) the plaintiff received discriminatory treatment, (2) there were changes in her performance evaluations after she filed her claim, or (3) Wal-Mart's stated reasons for termination were false. *Id.* at 601. The court noted that the plaintiff had been disciplined on three occasions prior to her filing

15

a workers' compensation claim, *id.*, and that plaintiff presented no specific proof to support her claims regarding other employees' violations of similar store policies. *Id.* at 594 n.5. The court granted summary judgment in favor of Wal-Mart on retaliatory discharge claim.

In only two of the twenty-one pages of her response in opposition to this motion for summary judgment does Shroyer explain why the facts of the instant case establish a causal connection between her workers' compensation claim in June of 2007 and her termination in April of 2008. *See* (Doc. 21-1, at 19-20.) Shroyer insists that she did not in fact leave the safe open: a fact which, because this court must take it as true for purposes of summary judgment, weighs in favor of a causal connection. *See Hall*, 637 F. Supp. 2d at 588; *Newcomb*, 222 S.W.3d at 291. Shroyer also alleges that Dollar Tree had no proof that she left the safe open. *Id.* at 19. Finally, in bullet format, Shroyer argues that Dollar Tree had a negative attitude toward her prior work-related injuries, that Dollar Tree failed to adhere to its established policies as set forth in the Associate Handbook, that Dollar Tree treated differently several similarly situated employees who committed the same infraction, and that Shroyer's performance evaluations changed after her workers' compensation claim. *Id.* at 19-20. She states that these facts create a genuine issue of material fact that precludes the granting of summary judgment as a matter of law. *Id.*

Nowhere in Shroyer's discussion of the facts does Shroyer cite any authority other than her own statements. As proof of Dollar Tree's "negative attitude" toward her work-related injuries, Shroyer cites the portions of her deposition that concern to the duties she was assigned after returning to work after her hand surgery. *Id.* at 19 (citing Shroyer Dep. 89:5-9, 94:6-17). She cites these same duties, as well her prior disciplinary history, as evidence of the fact that Dollar Tree "failed to adhere to its established policies." *Id.* at 20 (citing Shroyer Dep. 89:5-9, 94:6-17, 129-137

*generally*; Shroyer Aff. ¶ 8). She also cites those portions of her deposition, as well as one conclusory statement in her affidavit, as proof that Dollar Tree treated similarly situated employees differently. *Id.* (citing Shroyer Dep. 85:12-19, 86:5-9, 89:5-9, 94:6-17, 129-137 *generally*; Shroyer Aff. ¶ 8). Finally, Shroyer cites her own general allegations regarding the changes to her performance evaluations after her workers' compensation claim in 2007. *Id.* (citing Trans. Unemployment Hrg. 20:3-8; Shroyer Dep. 129-137 *generally*). No performance evaluations appear in the record.

This court finds that Shroyer failed to establish a causal connection between her workers' compensation claim and her termination. Shroyer cherry picked the factors from *Hall* and *Newcomb* that were found relevant to a claim of retaliatory discharge; however, Shroyer does not have the facts to support her contentions. *Compare Newcomb*, 222 S.W.3d at 291, *with* (Doc. 21-1, at 19-20). No Dollar Tree employee expressed disfavor toward workers' compensation claims, as was the case in *Newcomb*. Terry Cannon's alleged failure to accommodate the restrictions on Shroyer's hand does not, without more concrete evidence, indicate that Cannon had a "negative attitude" toward Shroyer's workers compensation claim. Additionally, apart from his role in discovering the unlocked and open safe, Cannon had no involvement, and offered no recommendation, in Barnes and Leonard's termination decision. That a nondecisionmaker evinced disregard for Shroyer's injury is insufficient to create a nexus between the injury and Shroyer's ultimate termination. Thus, Shroyer offers only speculative conclusions regarding the connection between her workers' compensation claim and her termination. *See Newcomb*, 222 S.W.3d 368 ("A plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship.").

17

Regarding Dollar Tree's failure to adhere to the policies set forth in its Associate Handbook, Shroyer does not cite any specific company policy. The portions of her deposition and affidavit to which she cites, which primarily concern her disciplinary history at Dollar Tree, are unrelated to any failure to enforce or apply policies. It is possible that Shroyer believes that Dollar Tree's alleged decision not to terminate other employees who left the safe open was a failure to follow company policy. However, Shroyer made this allegation in an affidavit filed contemporaneously with her response to this motion for summary judgment, and offered no proof of these incidents. Like the plaintiff in *Hall*, Shroyer did not provide a specific example of any other policy violation. *See Hall*, 637 F. Supp. 2d at 594, 601. And even if such incidents occurred, Dollar Tree has no policy mandating termination of an employee for leaving the safe open. Dollar Tree's Handbook provides that a violation of its Cash Security Policy can result in termination; whether such a measure is necessary depends on the facts and circumstances of each incident.

Furthermore, Shroyer provides no support for her contention that the employees who purportedly left the safe open were similarly situated to Shroyer.[1] The plaintiff bears the burden in the "similarly situated" inquiry of establishing that other employees' acts were of "comparable seriousness" to his or her own infraction. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 n.5 (6th Cir. 1992). Courts also look to whether the individuals "have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct, without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them

---

[1] While being "similarly situated" to other employees who were treated differently is a necessary element in a prima facie case of employment discrimination, in cases of retaliatory discharge it is used only as evidence of a causal connection between the protected activity and the termination decision. *Hall*, 637 F. Supp. 2d at 599; *Newcomb*, 222 S.W.3d at 291.

18

for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting

*Mitchell*, 964 F.2d at 583). Proof that similarly situated employees were disciplined just as harshly

as Shroyer for the same infraction suggests nonretaliation. *Moon*, 836 F.2d at 230. Like the plaintiff

in *Hall*, 367 F. Supp. 2d at 594, Shroyer presented no evidence that the circumstances surrounding

the other employees' open-safe incidents were similar to her own, or that the other employees had

similar disciplinary histories and mitigating circumstances. Shroyer also ignores Dollar Tree's

evidence that it terminated more than ten employees from 2007 to 2009 for violating its Cash

Security Policy or closing procedures, in some cases under similar or weaker facts than those in

Shroyer's case. *See,* e.g., *Moon*, 836 F.2d at 230.

       Finally, Shroyer ignores the abundance of evidence weighing against a finding of a

causal connection. That Shroyer filed three workers' compensation claims against Dollar Tree prior

to the claim that allegedly caused her termination, and that Dollar Tree took no adverse action

against Shroyer after these first three claims, strongly weighs in Dollar Tree's favor. Also favoring

Dollar Tree is the fact that it promptly and unconditionally permitted her to return to work after her

surgery in October of 2009. *See Cooper*, 570 F. Supp. 2d 987-88. Additionally, Shroyer betrays her

reliance on *Newcomb* by admitting readily that no one at Dollar Tree made any statements that led

her to believe her termination was because of her workers' compensation claim. Finally, Shroyer's

written and verbal disciplinary history at Dollar Tree shows that there actually was a decrease in

Dollar Tree's discipline of her after her workers' compensation claim in June of 2007.

       The parties' dispute regarding whether or not Shroyer left the safe open is immaterial

since, even if Shroyer did not leave the safe open, the remaining undisputed facts show that Shroyer

cannot establish the requisite causal connection between her workers' compensation claim and her

termination. Shroyer did not present a shred of concrete evidence to support her list of textbook reasons why the events are causally connected. (Doc. 21-1, at 19-20.) Her subjective beliefs and conclusory allegations that a causal connection exists cannot defeat summary judgment. *Reed*, 4 S.W.3d at 685. Shroyer fails to establish a prima facie case of retaliatory discharge, and Dollar Tree is entitled to judgment as a matter of law.

**B.    Defendant Dollar Tree's Legitimate, Non-Pretextual Reason**

However, even if Shroyer had established a prima facie case of retaliatory discharge, Dollar Tree has presented a legitimate, nonretaliatory reason for terminating Shroyer. *Anderson*, 857 S.W.2d at 559. A clear violation of company policy is a legitimate reason for termination. *Gant v. Univ. of Mich. Med. Ctr.*, 21 Fed. App'x 435, 435 (6th Cir. 2011).

Dollar Tree's Cash Handling and Security Policy instructed employees to "[a]lways secure money (including deposits and moneybags) in the safe," and that "[a]ll funds are to be locked in the safe after the store closes." (Leonard ¶ 6, Ex. 4); (Shroyer Dep. 116:23-117:4.) Its Associates Handbook warns: "Never leave a safe unlocked." (Leonard ¶ 7, Ex. 5); (Shroyer Dep. 118:16-119:9.) Its Position Description & Responsibilities form makes clear that assistant managers' principal responsibilities include performing closing procedures and protecting and securing company assets, including store cash. (Barnes ¶ 6); (Leonard Dec. ¶ 8, Ex. 6.) Finally, Dollar Tree's Corrective Action Policy provides that failure to comply with these policies and procedures may result in termination, (Barnes ¶ 8, Ex. 2), and that warnings are not required prior to termination. *Id.* Dollar Tree contends that it terminated Shroyer because of its honest belief that she committed gross violations of Dollar Tree's cash handling and store security policies, and failed to properly secure

20

company assets, when she allegedly left the store safe open on the night of April 3, 2008. (Doc. 29, at 1.) Such a violation of store policy and procedure is a legitimate reason for termination.

### C.     Plaintiff Theresa Shroyer's Proof of Pretext

Shroyer also fails to establish that Dollar Tree's articulated reason for its termination decision was a pretext for retaliation. If an employer presents a legitimate, nonretaliatory reason for the employment action, the burden shifts back to the employee to prove the employer's proffered explanation is pretextual. *Hall*, 637 F. Supp. 2d at 600. A plaintiff can create a question of fact as to a pretextual defense by showing that the employer's reasons (1) have no basis in fact; (2) were not the actual motivating factors for the termination; or (3) were insufficient to motivate the termination. *See Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 652 (Tenn. Ct. App. 2001) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329-30 (6th Cir. 1994)). In making this showing, the plaintiff must present "'specific, admissible facts, which realistically challenge the defendant's stated reasons' for its actions." *Thayer v. Tyson Foods, Inc.*, 355 Fed. App'x 886, 889 (6th Cir. 2009) (quoting *Ellis v. Buzzi Unicem U.S.A.*, 293 Fed. App'x 365, 368 (6th Cir. 2008)).

Shroyer does not address the "pretext" element in her response to Dollar Tree's motion for summary judgment. Instead, she alleges that she carried her burden of proof relative to the elements of a prima facie case, and that Dollar Tree was unable to provide a legitimate reason for terminating her. (Doc. 21-1, at 20.) However, this court will conduct its own inquiry into the satisfaction of the pretext requirement. Shroyer admits that leaving the safe open overnight is a gross policy violation that would be a sufficient motivation for termination, thereby ruling out the "insufficient motivation" pretext argument. And as discussed in Part VI.A, Shroyer presented no evidence that Shroyer's termination was motivated or caused by anything other that Dollar Tree's

belief that she left the safe open on the night of April 3, 2008, thus ruling out the "actual motivation" pretext argument. Accordingly, this court will consider only whether the facts suggest that Dollar Tree's articulated reason had "no basis in fact."

Under the Sixth Circuit's modified honest belief rule, as articulated in *Wright v. Murray Guard, Inc.*, in order to prove that its decision had a basis in fact, an employer must establish its "reasonable reliance on the particularized facts that were before it at the time the decision was made." 455 F.3d 702, 707-08 (6th Cir. 2006) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)). Thus, even if the articulated reason for the employer's termination decision turns out to have been false, the employer is not liable for its adverse employment action if it "if it acted upon an honest belief in its non-discriminatory reason and made a reasonably informed and considered decision." *Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 503 (6th Cir. 2009). Therefore, the question in the instant case is not whether Shroyer left the safe open, but whether the decisionmakers at Dollar Tree reasonably believed that she did.

Even under Shroyer's version of the facts, Dollar Tree's belief that Shroyer left the safe open had a strong basis in fact and was reasonable under the circumstances. Shroyer was responsible for locking the safe on the night of April 3, 2011, and was the only person in the store at closing with a key to the door and the combination to the safe. Dollar Tree's computerized schedule and time records at the Chapman Highway store for the week of 3/30/2008 - 4/5/2008 showed no employees scheduled to work, and no employees having worked, on the morning of April 4, 2008. (Cannon ¶ 8); (Leonard ¶ 10, Exs. 8.) When Cannon and Hensley arrived together at 8:30 a.m. on April 4, 2008, the Chapman Highway store was locked and empty. (Cannon ¶ 10, 11.) Additionally, the fact that the contents of the safe were intact indicated that the incident was an

accident, rather than the work of a burglar. (Barnes ¶ 14); (Cannon ¶ 10.) Based on a reasonable, good faith analysis of these facts, District Manager Barnes surmised that Shroyer negligently left the safe open. (Barnes ¶ 14.) Together with Human Resources Manager Barbara Leonard, he decided that Shroyer's actions should result in termination. *Id.* ¶ 15; (Leonard ¶ 11.) The decisionmakers at Dollar Tree relied on their reasonable belief due to the surrounding facts and circumstances that Shroyer violated store policies and procedures.

Finally, the court is compelled to note that the inconsistencies and contradictions between Shroyer's deposition and Dollar Tree's computerized time records, Dollar Tree's employment history, Shroyer's medical records, and Shroyer's prior sworn testimony weigh heavily against this court's reliance on Shroyer's version of the facts for purposes of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). However, for the foregoing reasons, this court finds that, even under Shroyer's version of the facts, Dollar Tree made an informed and reasonable employment decision. Shroyer cannot establish that Dollar Tree's proffered reason for its termination decision was pretextual

## VII.    Conclusion

Plaintiff Theresa Shroyer failed to establish a prima facie case of retaliation, and failed to prove that Defendant Dollar Tree Stores, Inc.'s proffered legitimate, nondiscriminatory reason was a pretext for retaliation. Accordingly, Dollar Tree's motion for summary judgment (Doc. 13) is **GRANTED** and this case is **DISMISSED.**

**IT IS SO ORDERED.**

**ENTER:**

_____s/ Thomas W. Phillips_____
United States District Judge